IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   1:08cr101 (JCC) |
| Abulaban et al., | ) |
| | ) |
| Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

These matters are before the Court on Defendant
Alokush's Motion for Severance and Motion Regarding Discovery,
Defendant Abdullah's Motion for Discovery, and Defendant Majali's
Motion to Adopt and Conform Defendant Alokush's Motion for
Severance and Motion for Discovery.  For the reasons stated
below, the Court will deny the motions to sever and deny the
discovery motions.

**I.  Background**

This case arises out of an Immigration and Customs
Enforcement ("ICE") sting operation.  The Defendants are alleged
to have conspired to sell cocaine and ecstasy in violation of 21
U.S.C. §§ 841(a)(1) and 846.  Much of the planning of the
conspiracy is alleged to have occurred in the Eastern District of
Virginia, with ecstacy delivered in New York and the discussion
of cocaine purchases taking place in North Carolina.

On April 24, 2008, Defendant Amjad Alokush ("Alokush")

1

filed a Motion to Sever Defendant.  On April 25, 2008, Defendant
Fares Abulaban ("Abulaban") also filed a Motion to Sever
Defendant.  These Motions were joined by Defendant Muneer Majali
("Majali").  On May 20, 2008, Abulaban requested that the Court
defer hearing on these Motions to allow extended time for
discovery and to reply to the Government's Response, a request
granted on May 23, 2008.  Oral argument was set for June 6, 2008.
On June 3, 2008, Defendant Iyad Abdullah ("Abdullah") made his
first filing in this case, a Motion to Adopt and Conform the
Motion to Sever.  On June 4, 2008, the Government responded,
requesting that the Court require Abdullah to make a showing of
good cause for failing to comply with the Court's filing
deadlines.  Also on June 4, 2008, Defendant Abulaban filed a
Reply to the Government's Response on Severance and Change of
Venue.

        On June 6, argument on the Motions was continued.  A
number of Defendants' original co-defendants were dismissed from
the instant case and indicted in a separate proceeding, and
others were transferred under Fed. R. Crim. Pro. 20.  On June 19,
the government filed a Superseding Indictment ("SI") charging the
remaining defendants with one count each of conspiring to
distribute cocaine and ecstasy in violation of 21 U.S.C. § 846.
The Court notified all parties on June 23 that they would have to
re-file any motions they wished to make in response to the SI.

2

On July 24, Alokush made a motion for discovery and a motion to sever himself from the SI.  On July 25, Abdullah filed a motion for discovery regarding the government's confidential informant.  Also on July 25, Majali filed a motion to adopt Alokush's two motions.  These motions are before the court.

## II.  Standard of Review

A. <u>Severance</u>

Federal Rule of Criminal Procedure 14 allows for the severance of defendants' trials when "joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant."  Fed. R. Crim. P. 14(a).  Severance is addressed to the discretion of the trial court.  Under Federal Rule of Criminal Procedure 8(b), an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  "If the defendants were improperly joined under Rule 8(b), severance [is], of course, mandatory and not a matter of discretion with the trial court."  *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978) (citations omitted).

The Supreme Court has held that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right

of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Therefore, "[t]he party moving for severance must establish that actual prejudice would result from a joint trial, and not merely that a separate trial would offer[] a better chance of acquittal." *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995) (citations omitted).  The Fourth Circuit "will only find an abuse of discretion where the trial court's decision to deny a severance deprives the defendant of a fair trial and results in a miscarriage of justice." *Id.* (quotations omitted).

In a conspiracy case, there is a presumption that alleged co-conspirators will be tried together. *United States v. Harris*, 498 F.3d 278, 291 (4th Cir. 2007).  "[B]arring special circumstances, individuals indicted together should be tried together." *United States v. Brugman*, 655 F.2d 540, 542 (4th Cir. 1981).

B. <u>Discovery</u>

Discovery decisions are made at the discretion of the District Court, and will not be overturned absent a clear abuse of discretion. *Strag v. Bd. of Trustees, Craven Community College,* 55 F.3d 943, 954 (4th Cir. 1995); *see also Conner v. United States*, 434 F.3d 676, 680 (4th Cir. 2006).

**III. Analysis**

A. <u>Severance</u>

Defendant Alokush argues that fundamental fairness requires the severance of his trial from that of his co-defendants.  He raises three principal arguments.

First, Alokush argues that if he must go to trial with his co-defendants, he will be prejudiced by any of their inculpatory statements that may be admitted into evidence. Alokush relies on *Crawford v. Washington* for the proposition that out-of-court testimonial statements incriminating him cannot be admitted against him when he did not have a prior opportunity to cross-examine the declarant.  *Crawford v. Washington,* 541 U.S. 36, 68 (2004).  This issue is moot, however, in light of the government's statement that it will not seek to admit inculpatory post-arrest admissions made by his co-defendants that incriminate Alokush.  *See* Gov't.'s Resp. to Def.'s Motions at 2.

Second, Alokush argues that the disparity of evidence creates a risk of guilt by association that would prejudice his trial.  Alokush notes that the SI mentions him with regard to only a few overt acts: (1) that he accompanied Mohammed Alazzam on deliveries of Benzocaine, used to "cut" cocaine, to Danny Cooper; (2) that he was present at a May 30, 2007 meeting during which drug trafficking discussions were held; and (3) that he introduced Mohammed Alazzam to Iyad Abdullah, the ring's alleged source of ecstasy.  *See* SI at Overt Acts 1-3; 25; 26.  Alokush

contrasts his alleged involvement with that of the remaining co-defendants, all of whom are mentioned more often in the SI.  He contends that *United States v. Mardian*, 546 F.2d 973 (D.C. Cir. 1976) supports his position.  In that case, the court held that Mardian's second motion for severance should have been granted, in order to minimize the danger that "guilt will improperly 'rub off'" when there is a "great disparity in the weight of the evidence, strongly establishing the guilt of some defendants." *Mardian*, 546 F.2d at 977 (citing *United States v. Kelly*, 349 F.2d 720, 756-59 (2d Cir. 1965)).

The *Mardian* decision is only partially on-point.  While Alokush, like Mardian, is named in only a handful of the alleged overt acts, Mardian's case was significantly different.  Mardian was charged with one count of conspiracy, while his co-defendants were all charged with multiple counts.  Here, Alokush is charged with one count of conspiracy, as are all other co-defendants. Additionally, Mardian's initial motion for severance was denied, and the circuit court, although it indicated that his initial motion was a strong one, did not overturn that denial as an abuse of discretion.  Instead, the court ruled that the trial court - which can grant a motion for severance at any stage of the trial if prejudice appears - should have granted Mardian's *second* motion for severance, made after his lead counsel became ill, implicating his interest in being represented by counsel of his

6

choice.  Moreover, the government did not oppose Mardian's second motion.  *Id.* at 977-982.

Most importantly, the trial of Mardian and his co-defendants focused on events that occurred after Mardian had ceased to be an active participant in the Watergate cover-up. *Id.* at 978.  The government alleges that Alokush, by contrast, was the "partner" of defendant Mohammad Alazzam, who was an active participant in most of the overt acts alleged in the indictment.  *See* Gov't.'s Resp. at 2-3.  And the SI alleges that Alokush was involved in transporting Benzocaine, a chemical agent used to cut cocaine, in Spring 2007, in the midst of the alleged conspiracy.  *See* SI at Overt Acts 2-3.

The party moving for severance must show that a joint trial would result in actual prejudice, not just that he would have a better chance at acquittal with a separate trial.  *United States v. Khan*, 461 F.3d 477, 490-91 (4th Cir. 2006); *United States v. Duffy*, 30 Fed. Appx. 240, 243 (4th Cir. 2002).  "In ruling on a motion for severance, the trial court is vested with discretion; it must carefully weigh the possible prejudice to the accused against the often equally compelling interests of the judicial process, which include the avoidance of needlessly duplicative trials involving substantially similar proof." *United States v. Jamar,* 561 F.2d 1103, 1106 (4th Cir. 1977) (citing *United States v. Isaacs,* 493 F.2d 1124, 1160 (7th Cir. 1974)).

In light of these principles, Alokush has not shown the actual prejudice that would warrant a separate trial.  The SI states that he took action in furtherance of a broad conspiracy, transporting a chemical agent used to cut cocaine.  It also states that he was present at a meeting during which the parties discussed the sale of 150 kilograms of cocaine and several thousand tablets of ecstasy.  These are not the actions of a person only tangentially affiliated with the activities alleged. Including Alokush in the trial of his alleged co-conspirators does not threaten his right to a fair trial.

Finally, Alokush argues that he needs Iyad Abdullah ("Abdullah") to testify that he did not introduce Alazzam to Abdullah, as alleged in paragraph 26 of the SI.  Under *United States v. Parodi*, 703 F.2d 768 (4th Cir. 1983), a motion for severance based on the need for a co-defendant's testimony entails a multi-factor analysis of the need for and strength of the testimony that would be given.  *See* Mot. for Severance at 6; *Parodi*, 703 F.2d at 779.

This issue, like the first, is now moot.  In its Response, the government admits that it no longer believes Alokush introduced Alazzam to Abdullah in May 2007, as recounted in Overt Act 26 of the SI.  The government learned since the date of the SI that all three defendants knew each other previously. Gov't.'s Resp. at 5.  Alokush calls this a "central allegation"

8

in the indictment against him; the government disputes the overall importance of an introduction since all three defendants knew each other previously.

We agree that the government's admission as to paragraph 26 of the SI has little bearing on whether Alokush's trial should be severed from that of his co-defendants.  While the fact that Alokush did not personally introduce Alazzam to Abdullah incrementally weakens Alokush's role as a go-between in the conspiracy, it does not undercut the central premise that the three were conspiring together.  The severance inquiry does not rest on any one specific allegation.  Rather, it depends on whether "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  The presumption is that alleged co-conspirators will be tried together.  *United States v. Harris*, 498 F.3d 278, 291 (4th Cir. 2007).  "[B]arring special circumstances, individuals indicted together should be tried together."  *United States v. Brugman*, 655 F.2d 540, 542 (4th Cir. 1981).  Alokush has not shown actual prejudice that would overcome this presumption.  This Court will deny his Motion for Severance.

B. <u>Majali's Motion to Adopt and Conform Alokush's Motion for Severance</u>

9

Defendant Muneer Majali, in his Motion to Adopt and Conform, joins in Alokush's Motion for Severance.  Majali provided no additional information in his Motion on any intention to use the testimony of a co-defendant, such that the application of *United States v. Parodi* would be appropriate.  703 F.2d 768 (4th Cir. 1983).  The Court has no indication that the government intends to use inculpatory, out-of-court testimonial statements of any of Malali's co-defendants against him.[1]

Majali's extensive involvement in the alleged conspiracy - he appears in eleven of the 50 alleged overt acts in the SI - significantly weakens a "disparity of the evidence" or "guilt by association" argument for severance.  Majali does not overcome the presumption that co-conspirators should be tried together, and he has not come close to a showing of actual prejudice.  Majali's motion for severance by adoption will be denied.

C. <u>Discovery</u>

Alokush and the government entered an agreed-upon discovery order pursuant to Fed. R. Crim. Pro. 16(a) on April 14, 2008.  The Order covered (1) discovery and inspection; (2) disclosure of evidence under Fed. R. Evid. 404(b); (3) any exculpatory *Brady* material under *Brady v. Maryland*, 373 U.S. 83

---

[1]  If the government later decides to use such statements against Majali, potentially activating his a right to severance under *Crawford*, Majali can file, and this Court will consider, another Motion for Severance.

(1963) and *United States v. Agurs,* 427 U.S. 97 (1976); and (4)
Jencks/*Giglio* materials for witnesses testifying in the
government's case-in-chief.  In return, Alokush agreed to produce
the statements of any witness who would testify on his behalf.
The government entered similar agreed-upon discovery orders as to
defendants Abdullah and Majali (collectively, the "Discovery
Orders").

On April 25, 2008, Alokush made a Motion Regarding
Discovery, in order to "clarify the discovery order initially
entered, as well as to indicate the nature of exculpatory
evidence obligated to be disclosed."  Mot. Regarding Discovery at
1.  The government filed a Consolidated Response to Defendants'
motions, including all unresolved motions for discovery, on May
12, 2008.  After the SI was entered, Alokush filed what was
essentially the same motion again.  Majali, by his Motion to
Adopt and Conform, joins in Alokush's current Motion Regarding
Discovery.  The government relies on its earlier Consolidated
Response in opposition.

On July 25, 2008, Abdullah filed a separate Motion for
Discovery, asking for the disclosure of further information
regarding the Confidential Informant ("CI") used by the
government in its investigation.  The government responded on
August 8, 2008.

To summarize, there are two pending motions for

11

discovery, one of them joined in by Majali via his Motion to
Adopt and Conform.  Both motions ask for the disclosure of
further information regarding the CI, including Jencks Act and
*Giglio* material.  Alokush's Motion also includes a number of
requests to "clarify" the agreed-upon discovery order.  The
parties have come to an agreement regarding these other discovery
issues.  The only remaining issue for the Court to decide
concerns discovery regarding the Confidential Informant.

    1. <u>Discovery Concerning the Confidential Informant</u>

       In its previous decision on Defendants' motions for
discovery, the Court agreed that the government would have to
disclose the name of the CI who played a central role in
constructing the case against defendants.  The government
subsequently disclosed the CI's name to defense counsel.
Abdullah and Alokush now seek additional information about the
CI, including all Jencks Act information, 18 U.S.C. § 3500, and
all information required to be disclosed under *Giglio v. United
States*, 405 U.S. 150 (1972).  They seek this Jencks/*Giglio*
information, normally discoverable only regarding government
witnesses, even if the government does not intend to call the CI
as a witness.  Abdullah contends that the defense is entitled to
more than the CI's name, and Alokush states that he understood
that, in granting the motions, the Court would require, "as a
matter of fundamental fairness," that the government "disclose

all Jencks and *Giglio* material relating to the CI, even if the prosecution did not intend to call him as a witness." Alokush's Mot. Regarding Disc. at 1.

Abdullah's Motion asks for all information potentially discoverable under the Jencks Act and *Giglio*, including Social Security numbers, alternate names, drivers license numbers, and last known whereabouts. Other requests under the Jencks/*Giglio* heading include criminal history information, written and recorded statements to law enforcement or the prosecution, and information about any promises, inducements, etc., that were made to the CI, among other requests. *See* Abdullah's Mot. for Disc. at ¶¶ 1-7. In support of his argument for further identifying information, Abdullah cites *Smith v. Illinois*, 390 U.S. 129 (1968). That case dealt with the ability of a defendant to question a witness on the stand as to his real name and address. It has no bearing on the discovery question at issue here.

The government contends it has fulfilled its discovery obligations with respect to the CI by releasing his name and that it will make further disclosures as required by law and by the agreed-upon Discovery Orders in place. It also notes that the CI has already received a death threat as a result of his cooperation, and it argues that further disclosure of identifying information is not required by law and would put the CI's life in danger.

13

The government further states that it will release
Jencks Act statements in accordance with the Discovery Orders if
it calls the CI as a witness, and that any written or recorded
statements from the CI that contain exculpatory evidence will be
disclosed to Abdullah.  *See* Gov't.'s Resp. at 3.  It also states
that it will disclose the known criminal records of government
witnesses admissible under Fed. R. Evid. 609 when it makes its
other Jencks Act disclosures.  *Id*. at 3-4.  The government adds
that it will turn over other information on the CI's criminal
history to the extent that such information represents *Giglio*
material.

There is no doubt that the CI played a crucial role in
building the government's case against the Defendants.  Neither
Alokush nor Abdullah, though, has cited any relevant case law or
other sources beyond the "spirit of the agreement" and a
fundamental fairness argument in support of his request for more
information regarding the CI.  In light of the government's
ongoing, good faith efforts to produce all the material that it
agreed to produce, and in light of the danger further disclosure
could pose to the life of the CI, at this time the Court will not
order discovery with regard to the CI beyond the scope of the
agreed-upon Discovery Orders already in place.

### IV. Conclusion

For the reasons stated above, the Court will **deny** Defendant

14

Alokush's Motion for Severance; **deny** Defendant Alokush's Motion

Regarding Discovery; **deny** Defendant Abdullah's Motion for

Discovery; **deny** Defendant Majali's Motion to Adopt and Conform to

Alokush's Motion for Severance; and **deny** Defendant Majali's

Motion to Adopt and Conform to Alokush's Motion for Discovery.

     An appropriate Order will issue.


September 10, 2008             /s/
Alexandria, Virginia        James C. Cacheris
                   UNITED STATES DISTRICT COURT JUDGE